STEVEN G. KALAR
Federal Public Defender
Northern District of California
JOHN PAUL REICHMUTH
Assistant Federal Public Defender
13th Floor Federal Building - Suite 1350N
1301 Clay Street
Oakland, CA 94612
Telephone:  (510) 637-3500
Facsimile:   (510) 637-3507
Email:        John_Reichmuth@fd.org

Attorneys for SANTOS EUGENIO AVILA-MONTES

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SANTOS EUGENIO AVILA-MONTES,<br><br>　　　　　Defendant. | **Case No.:** CR 20–0054 CRB<br><br>**DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE**<br><br>**Court:**　　　　Courtroom 6, 17th Floor<br>**Hearing Date:**　May 27, 2020<br>**Hearing Time:**　2:00 p.m. |

## INTRODUCTION

Mr. Avila-Montes wishes to enter into a plea agreement with the government and proceed to sentencing forthwith, without a Presentence Report. Such treatment is appropriate in this type of case, one that involves small hand-to-hand sales of narcotics in the Tenderloin. Mr. Avila-Montes asks this Court to exercise its authority to vary from the Guideline range and impose a sentence of five months incarceration. Such a sentence is consistent with other sentences handed down in recent Tenderloin drug sale cases in the District, and mitigates the health risks caused by COVID-19 by removing Mr. Avila-Montes from what is likely the most dangerous place to be during a pandemic— a jail—and reducing the jail population to reduce the risk that others in the jail and the community outside get sick. Such a sentence will reunite Mr. Avila-Montes with his family in Honduras at a time when they need his assistance.

## STATEMENT OF FACTS

**A.    Mr. Avila-Montes's History and Characteristics.**

The defense proffers the following biographical facts about Mr. Avila-Montes. He was born in Honduras and spent his life in the countryside of the Francisco Morazan Department. His parents worked as agricultural laborers in the coffee trade. He was poor, one of seven siblings, and attended four years of school. He is married, and his spouse and three-year-old child reside in Honduras. He understands that he will be deported after he serves his sentence for the instant offense, and he intends to remain in Honduras with his family and work in the fields.

**B.    The Nature and Circumstances of the Offense.**

Mr. Avila-Montes's case is one of many cases brought as part of the federal government's "Federal Initiative for the Tenderloin," a surge of street level drug-dealing prosecutions in federal court. During January 2020, Mr. Avila-Montes made a forty-dollar, and then a twenty-dollar, sale to an undercover officer. He was detained and released after each sale, which were separated by 10 days. He was arrested on February 11, 2020, and found to have hidden numerous small bindles of controlled substances. He has remained in custody since that date. There is no evidence to suggest that his role was anything other than that of bottom-tier seller of $5.00 and $10.00 bindles of controlled substances in the Tenderloin.

**SENTENCING ARGUMENT**

Criminal "punishment should fit the offender and not merely the crime." *Williams v. New York*, 337 U.S. 241, 247 (1949). That requires "the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall*, 552 U.S. at 52 (quotations omitted). The factors detailed in 18 U.S.C. § 3553(a) assist the Court in fulfilling this mandate to make "an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir. 1985). The sentence recommended in the Sentencing Guidelines is only one factor for district courts to consider in making this judgment, and it may not be weighed more heavily than any other § 3553(a) factor. *Gall*, 552 U.S. at 50; *see also Carty*, 520 F.3d at 991.

Here, Mr. Avila-Montes asks this Court to impose a sentence of 5 months prison. He agrees to a Total Offense Level 12 and a Criminal History Category I, which yield an advisory 10-to-16 month Sentencing Guidelines range.

**A.     Seriousness of the Offense, Respect for the Law and Just Punishment.**

There is no question that selling drugs is a serious crime that harms society and must be punished. At the same time, the Supreme Court has warned "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall*, 552 U.S. at 54 (quotations omitted).

A sentence of five months incarceration is a harsh punishment that takes "into account the real conduct and circumstances" here. This is true, in part, because there is a serious risk that Mr. Avila-Montes could be exposed to COVID-19 infection as a direct result of his sentence. He is also destined to spend time in immigration lockup(s) following release from the instant sentence. Even in the best of times, prisons and jails are "tinderboxes for the spread of disease."[1] These expert

---

[1] Kimberly Kindy, "An Explosion of Coronavirus Cases Cripples Federal Prison in Louisiana," *Washington Post*, Mar. 29, 2020, *available at* https://www.washingtonpost.com/national/an-explosion-of-coronavirus-cases-cripples-a-federal-prison-in-louisiana/2020/03/29/75a465c0-71d5-

assessments are now being proven like never before.  Lompoc, FCI, a federal prison, appears to have reached an infection total of over 900 inmates. https://www.bop.gov/coronavirus/ .  The total population was recently reported as 1165, but it is now reported as 965. https://www.bop.gov/locations/institutions/lof/.  Mr. Avila-Montes is serving "COVID-time," marked by not only heightened danger of serious infection but also by major restrictions of programming and movement designed to slow the spread of the disease.  The government's proposal, five additional months of "COVID-time" beyond the defense request, is not necessary under the principles of section § 3553(a).

**B.     Deterring Criminal Conduct and Protecting the Public.**

The goals of federal prosecution will be met by imposition of a five-month sentence.  Such a result, unlike the local response, sends a message that Tenderloin street sales will be met with federal felony prosecutions, jail sentences, and deportation.

Mr. Avila-Montes wants to remain in Honduras.  Furthermore, his ability to travel will be severely restricted as countries impose strict lockdowns to prevent the virus from spreading.

As for protecting the public, the current COVID-19 pandemic supports the requested sentence.  Reducing the prison population not only serves to protect inmates by reducing the number of people potentially exposed, but it also serves to protect other individuals who come into contact with inmates such as jail staff.

**C.     Avoiding Unwarranted Sentencing Disparities.**

While the Court must avoid unwarranted sentencing disparities among defendants with similar records convicted of similar conduct, the Ninth Circuit has explained sentencing courts must also "avoid 'unwarranted similarities among [defendants] who were not similarly situated.'" *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1058 (9th Cir. 2009) (quoting *Gall*, 552 U.S. at 55 (emphasis and brackets in original)); *see also* 18 U.S.C. § 3553(a)(6).

A sentence of five months avoids unwarranted disparities with defendants involved in the exact same stratum of Tenderloin drug dealing while avoiding sentencing similarities with more serious

---

11ea-85cb-8670579b863d_story.html.

sentences. Numerous defendants have received significant sentencing variances, including time-served sentences, even before the COVID-19 pandemic.

| Name | Case No. | Drug | Sale Amt. | CHC | USSG Range | Sentence | Priors |
|---|---|---|---|---|---|---|---|
| W. A.-V. | 19-560-VC | Crack, heroin | | II | 8-14 | 111 days | Federal drug case |
| S. A. | 19-454-VC | Heroin, meth | $20 | II | 15-21 | 152 days | Illegal reentry |
| B. A. | 19-426-WHO | Crack | $16 | II | 8-14 | 37 days | |
| W. C. | 19-452-WHO | Heroin | $17 | II | 8-14 | 132 days | 4 year drug sentence; 6 deports |
| W.C.-N. | 19-541-WHO | Heroin, crack | $20 | III | 24-30 | 12 months + 1 day | 2 illegal entries |
| Y. C.-O. | 19-453-SI | Crack | $16 | V | 21-27 | 15 mo | On supervised release for illegal reentry |
| R. D. | 19-527-WHO | Heroin | | III | 18-24 | 12 months + 1 day | 8 drug felonies, including sales |
| J. F. | 19-429-SI | Cocaine, heroin, meth | $15 | I | 10-16 | 118 days | 2 deports |
| I. M. | 19-650-RS | Crack, meth | | I | 0-6 | 48 days | |
| D. M.-G. | 20-26-RS | Crack | $20 | III | 10-16 | 83 days | |
| P. M. | 19-428-CRB | Heroin, crack, meth | $20 | II | 8-14 | 126 days | Federal drug case, deport |
| J. R.-V. | 19-713-EMC | Meth | $20 | I | 10-16 | 57 days | |
| A. R.-V. | 19-503-EMC | Heroin, crack | $20 | I | 6-12 | 111 days | |
| A. S. | 19-689-RS | Crack, heroin, meth, fentanyl | $25 | I | 12-18 | 102 days | |
| R. T. | 19-535-RS | Fentanyl, crack, heroin | $20 | II | 21-27 | 140 days | |
| L. V.-V. | 19-386-RS | Crack | $21 | II | 8-14 | 6 months | 32 month illegal reentry sentence |
| K.V.-J. | 19-483-EMC | Crack | $16 | I | 6-12 | 125 days | |
| M. V.-T. | 19-456-WHO | Crack | $17 | I | 6-12 | 120 days | |
| C. W. | 19-396-RS | Alprazolam | $20 | VI | 6-12 | 99 days | Involuntary manslaughter, assault with deadly weapon |

The current public health crisis, combined with these similar, and occasionally more serious cases, supports the propriety of sentencing Mr. Avila-Montes to five months custody.

# **CONCLUSION**

For the reasons above, Mr. Avila-Montes asks this Court to sentence him to five months in prison.

Dated:     May 20, 2020                                         Respectfully submitted,

                                                                STEVEN G. KALAR
                                                                Federal Public Defender
                                                                Northern District of California

                                                                        /S
                                                                _____
                                                                JOHN PAUL REICHMUTH
                                                                Assistant Federal Public Defender